# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 18-cv-62969-BLOOM/VALLE

SHERI LAINE and
GARY SEIDLER

       Plaintiffs,

v.

JETSMARTER, INC.,
DAVID M. SHERIDEN,
and JOHN DOES 1–4,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon the Verified Motion to Dismiss or Stay and to Compel Arbitration, Pursuant to Contract, filed by Defendants, JetSmarter, Inc. ("JetSmarter") and David M. Sheriden ("Sheriden") (together, "Defendants"), ECF No. [9] (the "Motion"). In the alternative, Defendants have moved to stay the action. *Id.* Plaintiffs Sheri Laine and Gary Seidler (together, "Plaintiffs") filed a response, ECF No. [17], and Defendants filed a reply, ECF No. [18]. The Court has carefully reviewed the Motion, the parties' supporting and opposing materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

This case arises out of an alleged breach of a contractual agreement between Plaintiffs and JetSmarter. Plaintiffs allege that JetSmarter is a company that provides private jet services to its members. ECF No. [1] ¶ 4. After communicating with Sheriden, a JetSmarter sales agent, Plaintiffs paid a membership fee to become JetSmarter members in March, 2018. *Id.* ¶¶ 5, 7, 9.

Plaintiffs became members at the "Smart" level, which provides members with seats on select flights under three hours in exchange for $30,000.00. *Id.* ¶¶ 7-9. Plaintiffs allege that Defendants alerted them in the summer of 2018 that the "Smart" level benefits would no longer be available to Plaintiffs. *Id.* ¶ 13. Rather than having pre-paid access to select flights as originally promised, Plaintiffs allege that Defendants began to require additional payments for all future flights. *Id.* Plaintiffs filed their Complaint after several unsuccessful communications seeking return of their membership fees or reinstatement of their original benefits. *Id.* ¶¶ 14-17.

In the Complaint, Plaintiffs assert claims for breach of contract (Count I); violation of good faith and fair dealing (Count II); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III); respondeat superior (Count IV); and fraud (Count V). In the instant Motion, Defendants request that the Court compel arbitration pursuant to paragraph 18 of the Membership Agreement. *See* ECF No. [9-1] (the "Membership Agreement").

## II.   LEGAL STANDARD

The Federal Arbitration Act embodies "a liberal federal policy favoring arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). So long as a valid arbitration agreement exists, there is a strong presumption in favor of enforcing arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. However, this strong presumption only exists once it is established that the parties did in fact enter into a "'validly formed and enforceable arbitration agreement.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)). Thus, the first factor that must be

addressed is whether a valid agreement exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

State law governs when determining whether an enforceable agreement to arbitrate exists. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016). In Florida, a valid contract requires "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). While there is no requirement that a contract be signed by the parties, "'there must be sufficient proof that the parties actually agreed to arbitrate.'" *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 874 (Fla. 4th DCA 2007) (quoting *Neiman v. Backer*, 167 A.D. 2d 403, 404 (N.Y. App. Div. 1990)).

The party asserting the existence of the contract containing the arbitration agreement "must prove its existence by a preponderance of the evidence." *St. Joe Corp.*, 875 So. 2d at 381. If the Court finds that an enforceable agreement exists and the resisting party fails to raise a genuine issue of fact regarding the existence of such an agreement, the Court then considers whether an arbitrable issue exists. *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018).

## III. DISCUSSION

Defendants seek to compel arbitration pursuant to the Membership Agreement, which is a click-wrap agreement containing an arbitration clause. "In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006). Plaintiffs do not dispute that they became JetSmarter members in March, 2018, or the existence of a contract with JetSmarter. Rather, Plaintiffs dispute whether their agreement contained a valid arbitration clause. Although Defendants provide a copy of a Membership Agreement that contains an arbitration clause as an attachment to the Motion, Plaintiffs argue that the Membership Agreement provided

is not the version of the agreement that existed when Plaintiffs joined JetSmarter. In addition, the document does not contain a name or date to which Plaintiffs can be tied. The Court finds no merit in Plaintiffs' arguments.

Along with the Membership Agreement, Defendants describe in detail the steps that each potential member must complete on the JetSmarter's mobile application before one can become a JetSmarter member. Defendants assert that potential JetSmarter members have access to the Membership Agreement and Terms of Use on JetSmarter's mobile application, and importantly, that they must agree to the terms of the Membership Agreement before becoming a member. Rather than signing a traditional document, this click-wrap agreement is agreed to by toggling an acceptance button. After becoming a member, reservations can be made through the same mobile application where the Agreement and Terms may be viewed.

Unlike the defendant in *Bazemore*, here, Defendants have met their burden. In *Bazemore*, the Court affirmed the denial of the defendant's motion to compel arbitration because the defendant failed to satisfy its burden of proving that an arbitration agreement existed. *Bazemore*, 827 F.3d at 1329. Specifically, the defendant in *Bazemore* did not provide evidence that the plaintiff accepted the terms of the credit card agreement or what those terms would have been. While the defendant did provide a copy of an agreement, it was merely a form agreement, and not a copy of the particular agreement that the plaintiff signed. *Id.* at 1331. In the verified Motion, Defendants assert that Plaintiffs could not become JetSmarter members without clicking through the screen notifying them of JetSmarter's Membership Agreement and Terms of Use, and consenting to be bound by those agreements, including explicit provisions mandating arbitration.[1] Additionally,

---

[1] Plaintiffs state that Defendants failed to provide any affidavits or similar declarations in support of their Motion. However, Defendants provided a verification of the factual statements in the Motion. Pursuant to

Defendants attach documentary evidence of the agreement at issue, as well as a membership invoice containing the Plaintiffs' names. Defendants' verification provides evidence that the Membership Agreement attached to the Motion is the agreement to which Plaintiffs assented. This Agreement includes the arbitration clause.

Plaintiffs object to the Membership Agreement that Defendants attach to the Motion, claiming that nothing in it ties Plaintiffs to the document. However, through Defendants' verification, there is sufficient evidence to support the conclusion that the Membership Agreement provided by Defendants is the same form that Plaintiffs viewed when they clicked through the agreement. *See Mason v. Midland Funding LLC*, No. 1:16-cv-02867-LMM-RGV, 2018 WL 3702462, at *14-15 (N.D. Ga. May 25, 2018) (finding that unlike the insufficient evidence in *Bazemore*, a copy of the form agreement in addition to a declaration that it is a true copy as was provided the plaintiff was sufficient evidence).

In further contrast with *Bazemore*, where the plaintiff's use of the subject credit card was not contingent upon acceptance of the cardholder agreement, Plaintiffs' membership benefits were contingent on clicking through the Agreement and agreeing to all terms. Plaintiffs did not have the ability to utilize the JetSmarter app and to book flights, which they did on at least one occasion, unless and until they agreed to the terms.

Plaintiffs further contend that the arbitration agreement is illusory, and therefore unenforceable, because the Membership Agreement grants JetSmarter the unlimited right to impose changes without notice. However, the introductory paragraph of the Membership Agreement states:

---

28 U.S.C. § 1746, Defendants' verification has the same "force and effect" as if they had provided an affidavit or sworn declaration.

> JetSmarter may amend or modify this Agreement from time to time. Amendments and modifications to this Agreement will be effective *upon JetSmarter's publication of such amendments or modifications on its website or the JetSmarter mobile application* (the "Application"). Member's continued access or use of the Service or the Application after such posting constitutes Member's consent to be bound by the amended or modified Agreement.

Membership Agreement, at 1 (emphasis added). Thus, Plaintiffs' assertion is incorrect. Plaintiffs also argue that JetSmarter relied on its unilateral authority when it made the changes to the Membership Agreement that form the basis of Plaintiffs' Complaint. Relying on *Pan-Am Tobacco Corp. v. Dep't of Corrs.*, 471 So. 2d 4, 5 (Fla. 1984), Plaintiffs correctly assert that it is "basic hornbook law that a contract which is not mutually enforceable is an illusory contract." Yet, Plaintiffs do not suggest that the arbitration clause itself is not mutually enforceable, lacks sufficient consideration, or contains an illusory provision. *See Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) ("the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same). Furthermore, Plaintiffs do not allege that the arbitration clause was unilaterally amended. Plaintiffs' claim that the Membership Agreement is illusory does not have the effect of transforming the otherwise valid arbitration agreement into an unenforceable one. *See Vince v. Specialized Servs., Inc.*, No. 8:11-cv-1683-T-24-TBM, 2011 WL 4599824, at *3 (M.D. Fla. Oct. 3, 2011) (rejecting plaintiff's argument that arbitration agreement contained within an employment agreement was unenforceable because defendant retained ability to alter terms of the employment agreement).

Plaintiffs argue that the Court should apply a summary judgment standard, which the Court agrees it must. Applying such a standard, Plaintiffs do not prevail in avoiding the arbitration clause, as Plaintiffs do not raise any issue of fact in dispute to support their arguments. With no

genuine disputed fact raised by Plaintiffs, and the burden satisfied by Defendants, the Court finds the existence of a valid agreement.

The Court finds that a valid agreement to arbitrate exists, and thus, there is a strong presumption in favor of arbitration. Yet the Court must also consider whether an arbitrable issue exists. Plaintiffs argue that because the parties' intent to arbitrate was not clear and unmistakable, the Court, not the arbitrator, should decide whether the arbitration clause covers the claims. However, because the Court finds the existence of a valid arbitration clause in the Membership Agreement, it also finds that when the Plaintiffs accepted the terms by clicking through, they intended to arbitrate, as provided by the terms of the Membership Agreement.

Plaintiffs further assert that the arbitration agreement does not apply to Plaintiffs' claims. Paragraph 18 of the Membership Agreement states in pertinent part that

> [a]ny claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association by a sole arbitrator under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, which are deemed to be incorporated herein by reference.

Membership Agreement, at 10. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). Because the Membership Agreement states that any dispute will be resolved by an arbitrator, the issue of arbitrability must be resolved in arbitration.

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss or Stay and to Compel Arbitration, **ECF No. [9]**, is **GRANTED**.

2. The parties shall submit all claims asserted in the Complaint to arbitration in accordance with the Membership Agreement.

3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 29, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record